# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF HAWAII

| | |
|---|---|
| In re<br><br>HAWAIIAN TELCOM COMMUNICATIONS, INC.,<br><br>      Debtor. | Case No. 08-02005<br>Chapter 11 |
| SHULTS & TAMM, A LAW CORPORATION, LITIGATION TRUSTEE,<br><br>      Plaintiff,<br><br>vs.<br><br>MICHAEL T. BROWN,<br><br>      Defendant. | Adv. Pro. No. 11-90011<br><br><br><br>Re: Docket No. 23, 33 |

## MEMORANDUM DECISION CONCERNING COUNTERMOTIONS FOR SUMMARY JUDGMENT AS TO COUNT III

## I. INTRODUCTION

      This is an adversary proceeding in bankruptcy, Fed. R. Bankr. P. 7001(1), in which Plaintiff, as litigation trustee pursuant to Debtors' confirmed chapter 11 plan of reorganization, seeks to recover allegedly avoidable transfers from Defendant, pursuant to sections 547 (preferences), 548 (fraudulent conveyances),

and 549 (postpetition transfers) of the Bankruptcy Code[1] and section 651C of the Hawaii Revised Statutes (state law fraudulent conveyances).

On December 21, 2011, Plaintiff filed a motion for summary judgment as to count III of the complaint, which seeks to avoid, under 11 U.S.C. § 549, postpetition payments to Defendant related to the termination of his employment. Such payments are commonly called 'severance payments'. Dkt. no. 23. On January 5, 2012, Defendant filed an opposition to this motion and countermotion for summary judgment. Dkt. no. 33.

The motion was heard on January 19, 2012. Christopher Muzzi, Esq., Moseley Biehl Tsugawa Lau & Muzzi, appeared on behalf of Plaintiff, in support of the motion. Michael Yoshida, Esq., and Noelle Catalan, Esq., Damon Key Leong, Kupchak, & Hastert, appeared on behalf of Defendant Michael T. Brown, in opposition to the motion.

## II. FACTS

On December 1, 2008, Hawaiian Telcom Communications, Inc., and its affiliates (collectively "Debtors") filed a voluntary petitions for relief under chapter 11 of the Bankruptcy Code. Debtors continued to operate their businesses

---

[1] Unless otherwise expressly stated herein, all references to chapters or sections shall refer to 11 U.S.C. § 101-1532 (the "<u>Bankruptcy Code</u>"), and all Rule references shall refer to the Federal Rules of Bankruptcy Procedure, 1001-9036 (the "<u>Bankruptcy Rules</u>").

as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

On December 30, 2009, the court entered an order confirming Debtors' joint chapter 11 plan of reorganization. Bk. no. 08-02005, dkt. no. 1131. The plan became effective on October 28, 2010. Bk. no. 08-02005, dkt. no. 1950.

The plan provided for the automatic assumption of all executory contracts with certain enumerated exceptions: (1) the contract was already assumed or rejected; (2) there was a pending motion to assume or reject the contract; or (3) the contract was listed on the schedule of rejected executory contracts and unexpired leases. No contract or agreement between Debtors and Defendant is within any of these categories.

The plan also provided for a litigation trust for the purpose of prosecuting or settling some of the avoidance actions that belong to the bankruptcy estate. On November 4, 2010, Plaintiff Shults & Tamm, A Law Corporation, was approved as trustee for the litigation trust.

About two years before filing for bankruptcy protection, Debtors employed Defendant Michael T. Brown as Senior Vice President, Customer Contact Centers & Wholesale Markets, pursuant to an Employment Agreement dated December 14, 2006. Dkt. no. 34, Exhibit 1. Attached to the Employment Agreement as Exhibit
3

A was a "Hawaiian Telcom Business Protection Agreement," pursuant to which Defendant was obligated to safeguard confidential information and not to compete with Debtors' business or solicit Debtors' employees. Id.

About four months pre-bankruptcy, on August 8, 2008, Defendant's employment was terminated by Debtors. The termination was 'without cause', so Defendant was entitled to severance payments. Dkt. no. 24, Exhibit C.

After Debtors filed their bankruptcy petition, Debtors made three payments to Defendant pursuant to the severance provisions in the Employment Agreement. The payments were made on December 13 and 26, 2008, and January 9, 2009, each in the amount of $8,826.92. Dkt. no. 24, Exhibits D-F. On January 29, 2009, Debtors sent Defendant a letter informing Defendant that the post-petition severance payments were made in error, that Debtors would reserve the right to recapture those payments, and that Debtors would no longer make severance payments to Defendant. Dkt. no. 34, Exhibit 3.

On January 25, 2011, Plaintiff commenced this adversary proceeding against Defendant seeking to recover the post-petition severance payments and other sums from Defendant, as avoidable transfers pursuant to sections 547, 548, and 549 of the Bankruptcy Code and section 651C of the Hawaii Revised Statutes.

## III. STANDARD

Summary judgment is proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c), Fed. R. Bankr. P. 7056; see also Barboza v. New Form, Inc. (In re Barboza), 545 F.3d 702, 707 (9th Cir. 2008). In resolving a summary judgment motion, the court does not weigh evidence, but rather determines only whether a material factual dispute remains for trial. Covey v. Hollydale Mobilehome Estates, 116 F.3d 830, 834 (9th Cir. 1997). In making this determination, the court views the evidence in the light most favorable to the nonmoving party and all justifiable inferences are to be drawn in favor of the nonmoving party. McSherry v. City of Long Beach, 584 F.3d 1129, 1135 (9th Cir. 2009).

## IV. ISSUES

1. Is the Employment Agreement an executory contract under 11 U.S.C. § 365, which was assumed pursuant to confirmation of Debtors' chapter 11 plan of reorganization?

5

U.S. Bankruptcy Court - Hawaii #11-90011 Dkt # 43 Filed 01/30/12 Page 5 of 13

2. If the Employment Agreement is not an executory contract, are the post-petition severance payments authorized by the Bankruptcy Code, 11 U.S.C. § 363(c)(1), as payments made in the ordinary course of Debtors' business?

## V. DISCUSSION

A trustee or debtor in possession may "avoid a transfer of property of the estate . . . that occurs after the commencement of the case; and . . . that is not authorized under this title or by the court." 11 U.S.C. § 549(a)(1), (2)(B). "If a trustee seeks to recover a postpetition transfer under section 549, . . . the trustee must show that a transfer occurred after the filing of the bankruptcy petition and that the transfer was not authorized by either the bankruptcy court or the [Bankruptcy] Code." Mora v. Vasquez (In re Mora), 199 F.3d 1024, 1026 (9th Cir. 1999). "Any entity asserting the validity of a transfer under § 549 of the [Bankruptcy] Code shall have the burden of proof." Fed. R. Bankr. P. 6001. Defendant, therefore, carries the ultimate burden to demonstrate the validity of the severance payments. See In re First Protection, Inc., 440 B.R. 821, 828 (B.A.P. 9th Cir. 2010).

Plaintiff has provided undisputed evidence that Debtors made three post-petition severance payments to Defendant. See dkt. no. 24, Exhibits D-F.

6

Defendant contends that the payments were valid because they were made pursuant to an executory contract that was assumed under Debtors' confirmed chapter 11 plan of reorganization. Defendant alternatively argues that the payments were valid because they were authorized under section 363(c)(1) as transactions made in the ordinary course of business.

## A. Executory Contract

Section 365(a) of the Bankruptcy Code provides that, with certain exceptions, the trustee or debtor in possession may assume or reject "any executory contract" of the debtor, subject to the Bankruptcy Court's approval. The standard in the Ninth Circuit for determining whether or not a contract is "executory", for bankruptcy purposes, is the so-called "Countryman" test: a contract is executory if, when the bankruptcy petition is filed, "the obligations of both parties are so unperformed that the failure of either party to complete performance would constitute a material breach and thus excuse the performance of the other." Unsecured Creditors' Committee v. Southmark Corp. (In re Robert L. Helms Constr. & Dev. Co.), 139 F.3d 702, 705 (9th Cir. 1998) (quoting Griffel v. Murphy (In re Wegner), 839 F.2d 533, 536 (9th Cir. 1988).

The parties' obligations, after termination of Defendant's employment by Debtors, are set forth in the pre-bankruptcy Employment Agreement. Debtors,

7

upon termination of employment, were required to pay severance payments to Defendant for six months. Defendant, upon termination of his employment, was prohibited from competition with Debtors or solicitation of its employees, and was required to safeguard any confidential information in Defendant's possession.

Plaintiff argues that Defendant's remaining obligations are not sufficiently material under the Countryman test to make the Employment Agreement an executory contract. For this proposition, Plaintiff cites In re A'Hearn, 2011 Bankr. LEXIS 3721, at *14-17 (Bankr. N.D. La. 2011); In re Andrews, 80 F.3d 906, 912 n.14 (4th Cir. 1996) ("Significant authority holds that an obligation to refrain from competition does not render a contract executory for the purposes of § 365.") (citing cases); In re Spectrum Information Technologies, Inc., 190 B.R. 741, 748 (Bankr. E.D. N.Y. 1996) (holding employees' remaining obligations of confidentiality and noninterference did not rise to level of material future performance which would make employment agreements "executory contracts"); In re Schneeweis, 233 B.R. 28, 32 (Bankr. N.D. N.Y. 1988) ("An obligation to comply with a restrictive covenant, such as a covenant not to compete, does not constitute a material obligation, and a contract under which one party must refrain from competing is therefore not executory[.]").

U.S. Bankruptcy Court - Hawaii    #11-90011    Dkt # 43    Filed 01/30/12    Page 8 of 13

In re Spectrum Technologies found that the Countryman test requires a contract to contain continuing material obligations by both parties if it is to be executory. 190 B.R. at 748. As to the employees' remaining obligations of confidentiality and non-interference, the court found that these were vestiges of the prior agreement and did not constitute material future performance. Id. (citing cases).

Defendant contends that the negative obligations of non-competition and non-solicitation, in conjunction with the affirmative obligation to safeguard confidential information, rise to the level of material future performance required under the Countryman test. See In re Farmland Indus., 294 B.R. 903, 923 (Bankr. W.D. Mo. 2003).

The determination of whether a contract is executory carries significant consequences for the bankruptcy estate and creditors. If the Employment Agreement were executory, for example, Debtors' obligations under the agreement are considered administrative expenses, and must be paid in full, ahead of other unsecured creditors. N.L.R.B. v. Bildisco and Bildisco, 465 U.S. 513, 531-32 (1984). The court must, therefore, exercise caution and careful consideration when analyzing contracts and determining whether they are executory.

The court agrees with Plaintiff for the following reasons. First, the weight of authority favors Plaintiff. The majority of cases examining non-competition and non-solicitation obligations hold that these provisions are not sufficiently material under the Countryman test. See, e.g., In re Andrews, 80 F.3d at 912 n.14 (citing cases).

Second, In re Farmland Indus. is distinguishable from the present case. That case found that the employment agreement contained "several obligations which, taken together, rise to the level of material future performance." 294 B.R. at 923. One of those remaining obligations required the executive to provide consulting services for a period of one year following termination of employment. Id. at 922. The court held that this consulting obligation, in addition to the requirement to refrain from competition and interference, was sufficiently material under the Countryman test. Unlike In re Farmland Indus., the remaining affirmative obligation of safeguarding confidential information is insufficient to rise to the level of a future material obligation. The consulting obligation imposed a material burden on the executive to perform specific services for the benefit of the employer. The safeguarding provision, to the contrary, is a standard requirement in confidentiality agreements.

U.S. Bankruptcy Court - Hawaii   #11-90011   Dkt # 43   Filed 01/30/12   Page 10 of 13

The Employment Agreement is not an executory contract under the Countryman test and case law. Therefore, it was not assumed pursuant to Debtors' confirmed chapter 11 plan of reorganization.

## B. Ordinary Course Payments

Defendant argues that the post-petition severance payments paid to Defendant by Debtors were made in the ordinary course of Debtors' business. Debtors operated their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. As such, Debtors "may use property of the estate in the ordinary course of business without notice or a hearing," or, if the transaction is not ordinary, after notice and a hearing. 11 U.S.C. § 363(b)(1), (c)(1).

Section 363 is designed to afford a debtor in possession flexibility to continue its daily operations without unnecessary court supervision while simultaneously protecting creditors by giving them an opportunity to be heard when the transaction is not ordinary. In re Roth American, Inc., 975 F.2d 949, 952 (3d Cir. 1992); see also H.R.Rep. No. 595, 95th Cong., 1st Sess. 181–82 (1977), reprinted in 1978 U.S.Code Cong. & Admin.News, 5787, 6141–43. The policy of allowing the debtor in possession flexibility, however, must not result in permitting payments that frustrate the theory and philosophy of the Bankruptcy

11

Code; that is, to maximize the value of the estate. Allowing post-petition payment of pre-petition unsecured debts would so frustrate the goals of the Bankruptcy Code.

The payment of a pre-petition debt by a debtor in possession or trustee has repeatedly been held to be out of the ordinary course of business. See, e.g., In re Napa Valley Physicians Plan, 2003 WL 22945648, at *1 (Bankr. N.D. Cal. Mar. 20, 2003) ("[Section] 363 is not interpreted so as to allow a Chapter 11 debtor to pay prepetition debt; it authorizes a debtor to use postpetition funds to pay postpetition debt, but not prepetition debt."); In re Quality Interiors, Inc., 127 B.R. 391, 396–97 (Bankr. N.D. Ohio 1991) ("The payment by a debtor-in-possession of prepetition claims outside of a confirmed plan of reorganization is generally prohibited by the Bankruptcy Code, and such transfers are recoverable [under 11 U.S.C. § 549]."); In re White Motor Corp., 831 F.2d 106, 111 (6th Cir. 1987) (holding that the Bankruptcy Code does not authorize conversion of pre-petition debt to post-petition debt); see also 5 Collier on Bankruptcy (16th ed.), ¶ 549.03[1] ("Examples of postpetition transfers not authorized by the Bankruptcy Code or the bankruptcy court which are recoverable by the trustee include payments to prepetition creditors . . . .").

U.S. Bankruptcy Court - Hawaii   #11-90011   Dkt # 43   Filed 01/30/12   Page 12 of 13

Defendant's severance payments are pre-petition debts. As such, section 363 does not authorize Debtors to use post-petition funds to pay these severance obligations in the ordinary course of business.

## V. CONCLUSION

The post-petition severance payments made by Debtors to Defendant are avoidable pursuant to 11 U.S.C. § 549. An order will be entered, granting Plaintiff's motion for summary judgment and denying Defendant's countermotion for summary judgment.

Dated: Honolulu, Hawaii, January 30, 2012.

*Lloyd King*
Lloyd King
United States Bankruptcy Judge